23-7506
*Wen v. New York City Regional Center, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of September, two thousand twenty-four.

PRESENT:

DENNY CHIN,
SUSAN L. CARNEY,
RICHARD J. SULLIVAN,
*Circuit Judges*.

---

BAI WEN, CAO XIAOLING, CAO YAN, CAO YEQIAN, CHEN BIN, CHEN LI, CHEN QIANG, CHEN WEILI, CHENG FANGZHOU, CHU MIN, FENG YING, GAO GUANGFENG, GU DANHUI, HAN MINGYUAN, HU LAN, HU MIN, HU WENSHU, HUANG HUI, HUANG WEI, HUANG XIUWEN, JIANG GUOSHUN, JIANG PEIYU, JIANG XUEFEN, JING LILI, HAN WENSHENG, KIT PING JACKY KWOK, LAI YONGHE, LAU KWAN, LI HUILING, LI JINLONG, LI LIQIAN, LI

MINGHUA, LI PEIJUN, LI QIANG, LI QINGHUA, LI XUE, LI YUHAO, LI YUHUAI, LIANG WEI, LIN SHUANGPING, LIN YONGQIANG, LIU JINGHUI, LIU MING, LIU WENJIE, LIU ZHE, MA AIQIN, MA ZHANHUA, MAO ZHENG, NI LI, PING JIE, QI PEIXIN, WU LIANGLIANG, QUE WEI, REN RONGRONG, SHAN DANDAN, SHAN WEI, SHEN CONGYING, SHEN HUIYU, SHI YIQUN, SHU LINGLI, SONG CHAO, SONG XIAOYING, SUN HAO, SUN XIN, SUN YAN, SUN YUXIN, TAN MANFANG, TENG LEZHI, WAN LILI, WANG YINGMING, WANG CHAO, WANG CHUANHONG, WANG NINGHONG, WANG YANG, WANG YATAO, WANG JIANPING, WU DING, XIONG XIN, XU JIEPING, XU MINXIA, YANG LI, YANG MENG, YANG XUELI, YE QIANG, YE XIN, YIN YOUGENG, YING JIANFENG, YU QIZHEN, YU ZHAOHUI, YVONNE ZHU, ZHANG HUI, ZHANG PINGJUN, ZHANG QIAN, ZHANG SHOUTAO, ZHANG XUEMEI, ZHANG YUESHENG, ZHANG YUMEI, ZHANG ZEYU, ZHAO JIAXU, ZHAO MENGSHI, ZHAO YANGYANG, ZHENG HONGFEI, ZHENG YONG, ZHOU LINA, ZHOU YIN, ZHU FENGBO, ZHU LIYI,

*Plaintiffs-Appellants*,

v. No. 23-7506

NEW YORK CITY REGIONAL CENTER, LLC,

*Defendant-Appellee*.*

---

* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

| | |
|---|---|
| **For Plaintiffs-Appellants:** | STEPHEN R. HALPIN III (Robert S. Landy, Amy C. Brown, Bryan W. McCracken, *on the brief*), Ford O'Brien Landy LLP, New York, NY. |
| **For Defendant-Appellee:** | GREGORY SILBERT, Weil, Gotshal & Manges LLP, New York, NY (David J. Lender, Jessica Lynn Falk, A.J. Green, Shai Berman, Weil, Gotshal & Manges LLP, New York, NY; Mark Pinkert, Weil, Gotshal & Manges LLP, Miami, FL, *on the brief*). |

Appeal from a judgment of the United States District Court for the Southern District of New York (Lewis J. Liman, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the September 28, 2023 judgment of the district court is **AFFIRMED**.

Plaintiffs are a group of Chinese investors who appeal from the district court's judgment dismissing the claims they brought against New York City Regional Center, LLC ("NYCRC") for allegedly defrauding them out of their investments in an EB-5 visa project. The EB-5 program allows foreign investors to obtain a green card by investing $500,000 in certain qualifying projects, which are administered by pre-approved financing companies like NYCRC. One of NYCRC's projects was to redevelop the bus station on the Manhattan side of the George Washington Bridge (the "Project"). In search of financing, NYCRC

enlisted two Chinese firms to market the Project to potential EB-5 investors in China. According to Plaintiffs, NYCRC directed the Chinese firms to pitch the venture by misrepresenting its terms, including by falsely telling Plaintiffs that their investments would be secured by a mortgage lien on the bus station. Although the offering memorandum explicitly contradicted that statement – revealing that the collateral was not a lien on real property at all – only a few investors received a copy of the memorandum when they signed up for the investment. Most instead received only the signature page of a subscription agreement that – in the missing pages investors never saw – attested that each investor had "carefully reviewed the Offering Memorandum and underst[ood] the nature of the proposed investment in the Company." Sp. App'x at 23. The subscription agreement was also in English, which Plaintiffs allege they could not understand.

Despite the missing pages and foreign text, over a hundred investors signed the signature page anyway, thus each agreeing to invest $500,000 (plus an annual management fee to NYCRC) in exchange for the prospect of a visa. NYCRC pooled those investments into two LLCs, which then extended loans to the Project to fund the renovations. Work was delayed almost immediately, however, after

Hurricane Sandy damaged the bus station and other cost overruns began to accumulate. The Project finally collapsed in 2019, wiping out Plaintiffs' investments.[1] Plaintiffs entered into a tolling agreement that began on September 1, 2021, and filed suit against NYCRC a year later for fraudulent inducement and breach of fiduciary duty. The district court dismissed the action and this appeal followed.

## I. Fraudulent Inducement

On appeal, Plaintiffs first argue that the district court erred in dismissing their fraudulent inducement claims as barred by the statute of limitations. We review a dismissal under Rule 12(b)(6) *de novo*, accepting as true all factual allegations in the complaint and construing all reasonable inferences in the nonmovant's favor. *See Viet. Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). Under New York law, which applies here, a claim for fraud must be commenced within six years from when the fraud was committed or within two years from when it could have been discovered with reasonable diligence, whichever is later. *See* N.Y. C.P.L.R. 213(8). Because

[1] Although Plaintiffs lost the entirety of their investments, most received a green card for participating in the Project.

Plaintiffs filed this suit more than six years after they were allegedly defrauded, they "bear[] the burden of establishing that the fraud could not have been discovered before the two-year period" prior to September 1, 2021, the date the tolling agreement took effect. *Guilbert v. Gardner*, 480 F.3d 140, 147 (2d Cir. 2007). Under New York law, a plaintiff is on inquiry notice – and thus could have discovered the fraud – "where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded." *MBI Int'l Holdings Inc. v. Barclays Bank PLC*, 57 N.Y.S.3d 119, 121 (1st Dep't 2017) (alterations and internal quotation marks omitted).

Here, the district court concluded that Plaintiffs were on inquiry notice when each signed the subscription agreement, the last of which was executed in 2014. We agree. "A party who executes a contract is presumed to know its contents and to assent to them." *Holcomb v. TWR Express, Inc.*, 782 N.Y.S.2d 840, 841 (2d Dep't 2004) (internal quotation marks omitted). And if a party does not receive the full agreement, then "ordinary diligence" requires them to ask for the remainder before signing. *Sharma v. Walia*, 157 N.Y.S.3d 722, 723 (1st Dep't 2022); *see also Shklovskiy v. Khan*, 709 N.Y.S.2d 208, 209 (2d Dep't 2000) ("[A] party will not be excused from his failure to read and understand the contents of a

[contract].”). Even though many Plaintiffs received only the signature page of the subscription agreement, that triggered a duty for them to inquire about, obtain, and fully read the missing pages. Had they done so, Plaintiffs would have seen the clause attesting to having “carefully reviewed the Offering Memorandum.” Sp. App’x at 23. This, in turn, would have obliged Plaintiffs to inquire about, obtain, and fully read *that* document, which clearly exposed the alleged falsity of NYCRC’s statements that the investments were secured by a lien on real property. *See* App’x at 413 (offering memorandum for some investors stating that loans secured by mere “leasehold mortgage”); *id.* at 1226 (offering memorandum for remaining investors stating that only recourse for default is “contractual remedies”). Simply put, an investor exercising no more than ordinary diligence would have uncovered the alleged fraud by 2014 at the latest. The district court was thus correct in dismissing Plaintiffs’ fraudulent inducement claims as untimely.

None of Plaintiffs’ counterarguments is persuasive. For starters, Plaintiffs insist that they could not have discovered the fraud at signing because the investment documents were all in English, which they did not understand. But it is well established that “[p]ersons who are illiterate in the English

language . . . must make a reasonable effort to have the contract read to them" or translated – which Plaintiffs do not allege they did here. *Shklovskiy*, 709 N.Y.S.2d at 209–10. Plaintiffs also assert that the offering memoranda did not put them on inquiry notice as to the full scope of the fraud, since NYCRC (through its agents) allegedly misrepresented *other* features of the investment as well. *See, e.g.*, Pls. Br. at 5–6 (alleging misrepresentations about the value of the collateral, the amount of public funding, when work would commence, and who would serve as general contractor); *id.* at 11–12 (alleging more misrepresentations about value of collateral and progress of work). But inquiry notice is triggered at the first "storm warning[]" that would alert an ordinary investor to the "probability" of fraud, which is often well before "every aspect of the alleged fraudulent scheme" is revealed. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 427 (2d Cir. 2008) (internal quotation marks omitted) (describing analogous inquiry notice principles under federal securities law). Here, the offering memoranda flatly contradicted NYCRC's alleged statements about loan collateral, which immediately would have triggered doubt – and with it, inquiry notice – about the various other statements that NYCRC made about the stability of the Project.

Plaintiffs fare no better on their final argument – that NYCRC actively concealed the fraud so as to toll the statute of limitations. Although fraudulent concealment can toll the statute of limitations, the plaintiff must show (among other things) that he "exercised due diligence in pursuing the discovery of the claim during the period [he] seeks to have tolled." *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999); *see also MBI Int'l Holdings Inc.*, 57 N.Y.S.3d at 126. As just discussed, Plaintiffs did not exercise such diligence here, as evidenced by their failure to even *read*, much less investigate, the contradictory statements in the offering memoranda.

## II. Breach of Fiduciary Duty

Plaintiffs also challenge the district court's dismissal of their breach of fiduciary duty claims, which they assert derivatively on behalf of the two LLCs that NYCRC used to loan the investor money to the Project. These claims allege that NYCRC, as sole managing member of the LLCs, breached its fiduciary duties by failing to declare defaults on the loans when the Project started to unravel.

In general, the business decisions of LLC managers are protected by the "business judgment rule," which "bars judicial inquiry into actions of [managers] taken in good faith and in the exercise of honest judgment in the lawful and

legitimate furtherance of corporate purposes." *Zuckerbrod v. 355 Co.*, 979 N.Y.S.2d 119, 120 (2d Dep't 2014) (internal quotation marks omitted). This protection does not extend, however, to decisions by a manager who is "self-interested" in the challenged transaction. *Pokoik v. Pokoik*, 45 N.Y.S.3d 50, 52 (1st Dep't 2017).

Plaintiffs argue that this exception applies here because NYCRC was self-interested in continuing to receive its management fees – set at 2–3% annually – which would have ceased if it declared a default on the LLCs' loans to the Project. But we cannot agree that a fiduciary's compensation in the form of management fees renders it self-interested in any decision that prolongs a business. To be sure, fiduciaries are self-interested in the initial transaction that *sets* their level of compensation. *See Marx v. Akers*, 88 N.Y.2d 189, 202 (1996). But New York courts have never deemed a fiduciary to be self-interested simply because he will continue to receive that compensation as long as the business endures. *See, e.g.*, *Owen v. Hamilton*, 843 N.Y.S.2d 298, 302 (1st Dep't 2007) (finding that receiving a salary does not render a director self-interested). Indeed, if that were true, then the *only* decisions that would be protected by the business judgment rule would be those that wind down a company, since any decision to prolong the venture would result in the fiduciary's continued compensation. Because such an

approach would permit the exception to swallow the rule, we cannot agree that a business decision loses protection simply because the fiduciary will continue to receive his pre-arranged fee from the continuing enterprise. As a consequence, we agree with the district court that the business judgment rule covers NYCRC's decisions concerning the loans, and that Plaintiffs' breach of fiduciary claims must fail.

* * *

We have considered Plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court